# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRIAN E. MENJIVAR SANCHEZ,<br><br>    Petitioner,<br><br>    v.<br><br>MINGA WOFFORD, Warden, Mesa Verde Immigrant Processing Center; NANCY GONZALEZ, Acting Director of Bakersfield, CA Field Office, U.S. Immigration & Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and PAMELA BONDI, Attorney General of the United States,<br><br>    Respondents. | Case No.: 1:25-cv-01187-SKO (HC)<br><br>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>(Doc. 12) |

Petitioner Miriam E. Menjivar Sanchez is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. All parties having consented to the jurisdiction of the Magistrate Judge, on September 26, 2025, the case was assigned to the undersigned for all purposes, including trial and entry of final judgment. (Doc. 18.) Pending before the Court is Petitioner's motion for temporary restraining order dated September 23, 2025. (Doc. 12.)

Petitioner is a noncitizen who has lived in the United States for twenty years. On June 18, 2025, Immigration and Customs Enforcement ("ICE") agents arrested Petitioner outside her place of employment on a warrant issued pursuant to 8 U.S.C. § 1226. On August 25, 2025, Petitioner was

1

granted conditional release on $3,000 bond by an immigration judge ("IJ"). The government appealed, and on September 11, 2025, the IJ judge reversed her decision finding Petitioner ineligible for bond based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as requiring mandatory detention during removal proceedings for all noncitizens charged with entering the United States without lawful admission.

On September 11, 2025, Petitioner filed a petition for writ of habeas corpus. (Doc. 1.) Petitioner contends the IJ erred in concluding she was detained under 8 U.S.C. § 1225(b)(2)(A) as that statute does not apply to her. Petitioner filed a motion for temporary restraining order on September 23, 2025, requesting the Court order her release on $3,000 bond under 8 U.S.C. § 1226(a) as initially ordered by the IJ.

On October 8, 2025, Respondents filed an opposition, (Doc. 20), and on October 10, 2025, Petitioner filed a reply, (Doc. 21). The parties have waived a hearing on the matter. For the reasons set forth below, Petitioner's motion for temporary restraining order is GRANTED.

## BACKGROUND

Petitioner is a 44-year-old citizen of El Salvador who entered the United States without admission in January 2005. (Doc. 20-1 at 6.) She was briefly detained approximately 10-15 days and then released on her own recognizance. (Doc. 20-1 at 7.) In September of 2005, Petitioner was ordered removed *in abstentia*. (Doc. 20-1 at 11-13.) Petitioner states she was unaware of immigration court proceedings because at that time she was in an abusive relationship and was unable to receive her mail. (Doc. 1-1 at 1.)

For the past twenty years, Petitioner has resided primarily in Santa Rosa, California. (Doc. 12-1 at 16.) She has three children ages 19, 18, and 12. (Doc. 12-1 at 16.) She suffers from diabetes and is dependent on insulin. (Doc 12-1 at 16.) Prior to her detention, she was being treated with twice-per-day injections of insulin and the oral medication Metformin. (Doc. 1-1 at 2.)

On June 18, 2025, Petitioner was arrested by ICE officers outside of the dental office she had been cleaning while employed by a janitorial service. (Doc. 20-1 at 19-20.) She was taken into custody and transported to the Mesa Verde Detention Center where she has since remained in custody. (Doc. 20-1 at 19-20.) In that time, Petitioner has been transported to the Bakersfield hospital on three

occasions due to uncontrolled hyperglycemia. (Doc. 1-1 at 2.) According to Petitioner, she is often only given one injection per day and her blood sugar has risen to very high levels. (Doc. 1-1 at 2.) Counsel for Petitioner states he made a request with the ICE Field Office for humanitarian parole based on Petitioner's health condition. (Doc. 1-1 at 2.) The request was not granted or denied, but Counsel was told Petitioner was receiving appropriate care. (Doc. 1-1 at 2.)

On June 18, 2025, a motion to reopen removal proceedings was filed. (Doc. 20-1 at 18-20.) On July 8, 2025, the Immigration Court granted the request. (Doc. 1-7.)

On August 25, 2025, the IJ determined that Petitioner was detained under the authority of 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225. (Doc. 1-2 at 1-3.) The IJ weighed the evidence of danger to the community and flight risk and determined that Petitioner was not a danger and only a minimal flight risk. (Doc. 1-2 at 1-3.) The IJ granted Petitioner conditional release on a $3,000 bond. (Doc. 1-2 at 1.) The Department of Homeland Security ("DHS") then filed a notice of intent to appeal which triggered an automatic stay. (Doc. 1-4 at 1.)

On September 11, 2025, the IJ reversed the decision to grant conditional release. (Doc. 20-1 at 22.) The IJ noted that the recent Bureau of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) deprived the IJ of the authority to set bond for Petitioner's release. (Doc. 20-1 at 22.) The appeal remains pending at the BIA.

## DISCUSSION

### I. Legal Standard

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20 (citing Munaf, 553 U.S. at 689–90; Amoco Prod. Co. v. Vill. of Gambell, AK, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the

merits is a threshold inquiry and is the most important factor." Simon v. City & Cnty. of San Francisco, 135 F.4th 784, 797 (9th Cir. 2025) (quoting Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**II.     Likelihood of Success on the Merits**

Petitioner contends that the immigration judge erred in reversing her earlier decision to conditionally release Petitioner, concluding that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1225(b) rather than § 1226. (Doc. 1 at 3.) This case is one of statutory interpretation, and the Court's analysis begins with the text of the statute. See Lackey v. Stinnie, 604 U.S. 192, 199 (2025).

    A.  Statutory Framework

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs the detention of noncitizens seeking admission into the United States. See Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). As relevant here, section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." Gomes v. Hyde, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). "Other than this limited exception[,] . . . detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." Lopez Benitez v. Francis, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025). Further, under § 1225(b)(2)(A), detention is mandatory "until removal proceedings have concluded."

While section 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*," section 1226 "authorizes the Government to detain certain aliens *already in the country*

4

pending the outcome of removal proceedings." Jennings, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out the "default rule" for noncitizens already present in the country. Id. at 288. It provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [T]he Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
> (A) bond . . . ; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). "Section 1226(a), therefore, establishes a discretionary detention framework." Lopez Benitez, 2025 WL 2371588, at *3 (internal citations omitted). An immigration officer makes the initial determination to either detain or release the noncitizen, but after that decision has been made, the noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(c)(8), (d)(1). At this bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" Hernandez v. Sessions, 872 F.3d 976, 982 (9th Cir. 2017) (citing In re Guerra, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Here, the IJ initially determined that Petitioner was being detained under Section 1226. The IJ found Petitioner did not present a risk of danger to the public and was only a minimal flight risk. Accordingly, the IJ granted conditional release on posting of a $3,000 bond. As noted above, the IJ subsequently reversed her decision finding Petitioner ineligible for release after determining Petitioner was detained under § 1225(b).

B. Section 1225(b) Does Not Apply to Petitioner.

The government contends that the applicable detention authority in this case is section 1225(b), as the immigration judge concluded, because Petitioner is an "applicant for admission." (Doc. 20 at 9-17.) The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). The government relies primarily on a recent decision of the Board of Immigration Appeals ("BIA"), Matter of Yajure Hurtado, 26 I&N Dec.

5

216 (BIA 2025). (Doc. 20 at 18-20.)  In that case, the BIA held that noncitizens who are present in the United States without admission and are arrested on a warrant are subject to section 1225(b)(2)(A). Matter of Yajure Hurtado, 29 I&N Dec. 216 (B.I.A. 2025).

This Court is not bound by the BIA's interpretation of sections 1225 and 1226. A federal court "may look to [the BIA's] interpretations [of the INA] for guidance, but [must not] defer to the agency. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394, 413 (2024). For reasons that follow, the Court finds Yajure Hurtado unpersuasive.

The government's argument that section 1225(b) applies to all noncitizens present in the United States without admission is implausible. The government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. As previously noted, this Court reached this conclusion in Guerrero Lepe v. Andrews, 25-cv-01163-KES-SKO (E.D. Ca. Sept. 23, 2025). Other district courts have also reached a similar conclusion. See, e.g., Lopez Benitez v. Francis, No. 25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); Martinez v. Hyde, No. CV 25-11613-BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); Gomes v. Hyde, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025); Vasquez Garcia v. Noem, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Lopez-Campos v. Raycraft, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, No. 3:25-cv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025); Doc. 11, Benitez v. Noem, No. 5:25-cv-02190 (C.D. Cal. Aug. 26, 2025); Leal-Hernandez v. Noem, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Romero v. Hyde, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Arrazola-Gonzalez v. Noem, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Aguilar Maldonado v. Olson, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Dos Santos v. Noem, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Rocha Rosado v. Figueroa, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); Maldonado Bautista v. Santacruz, No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025). Other than the BIA's recent decision in Matter of Yajure Hurtado, there is no authority for

6

the position that noncitizens such as Petitioner who have been present in the United States for many years are now subject to section 1225(b).

The government contends that section 1225(b) applies to all noncitizens living in this county who did not enter lawfully, regardless of how long they have lived here or whether they ever took any affirmative step to seek admission. The government's proposed interpretation of the statute ignores the plain meaning of the phrase "seeking admission." Martinez, 2025 WL 2084238, at *6. "Seeking" means "asking for" or "trying to acquire or gain." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking. And the use of a present participle, "seeking," "necessarily implies some sort of present-tense action." Martinez, 2025 WL 2084238, at *6. The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). And "entry" has long been understood to mean "a crossing into the territorial limits of the United States." Hing Sum v. Holder, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting Matter of Pierre, 14 I & N Dec. 467, 468 (1973)). To piece this together, the phrase "seeking admission" means that one must be *actively* "seeking" "lawful entry." See Lopez Benitez, 2025 WL 2371588, at *7.

In this case, Petitioner is not actively "seeking" "lawful entry." She affected entry into the United States twenty years ago. Rather than seeking entry, Petitioner is present in the United States and seeking to remain. The Lopez Benitez court analogized the difference as follows:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for more than two years.

Lopez Benitez, 2025 WL 2371588, at *7; see also Lopez-Campos v. Raycraft, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

7

While Petitioner could be considered an "applicant for admission" because she is allegedly an "alien present in the United States who has not been admitted," as defined at 8 U.S.C. § 1225(a)(1), the government has failed to show that, over 20 years after she entered the country, Petitioner was actively "seeking admission." The government's "selective reading of the statute . . . ignores its 'seeking admission' language." Martinez, 2025 WL 2084238, at *6. "If, as the government argues, [section] 1225(b)(2)(A) was intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute." Lopez Benitez, 2025 WL 2371588, at *6. "That is, rather than stating that mandatory detention is required for any 'applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted,' the statute would instead provide for mandatory detention for any 'applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted.'" Id. (quoting 8 U.S.C. § 1225(b)(2)(A)). The rule against surplusage counsels that "'every clause and word of a statute' should have meaning." See United States, ex rel. Polansky v. Exec. Health Res., Inc., 599 U.S. 419, 432 (2023) (quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883)); League of California Cities v. Fed. Commc'ns Comm'n, 118 F.4th 995, 1019 (9th Cir. 2024) ("The rule against surplusage generally prohibits [a court] from interpreting [a statute] in a way that 'mak[es] a part of it unnecessary.'") (quoting NLRB v. Aakash, Inc., 58 F.4th 1099, 1105 (9th Cir. 2023)). The government's position would make the "seeking admission" language meaningless and violate the rule against surplusage. Martinez, 2025 WL 2084238, at *6; Lopez Benitez, 2025 WL 2371588, at *6.

The government's argument also disregards the context of sections 1225 and 1226 and the broader statutory scheme. As the Supreme Court noted in Jennings, section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." Jennings, 583 U.S. at 287. Section 1225 "authorizes the Government to detain certain aliens *seeking admission* into the country," whereas section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." Id., 583 U.S. at 289 (emphasis added).

8

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809 (1989). The title of section 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. "Inspection" is a process that occurs at the border or other ports of entry. See Posos-Sanchez v. Garland, 3 F.4th 1176, 1183 (9th Cir. 2021) (explaining that "inspection and authorization" must "take place at a 'port of entry'" for one to be considered to have "lawfully entered"); 8 C.F.R § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection."). The title of section 1225 also refers to "expedited removal," which applies to a noncitizen "who is arriving in the United States" and "is inadmissible." See 8 U.S.C. § 1225(b)(1)(A). Additionally, section 1225(a)(2) prohibits the admission of "stowaways"—noncitizens "who obtain[] transportation without the consent of the owner . . . of any vessel or aircraft through concealment aboard such vessel or aircraft," 8 U.S.C. § 1101(a)(49)—who would be discovered at the border or a port of entry. 8 U.S.C. § 1225(a)(2).[1]

The third problem with the government's argument is that application of section 1225(b)(2)(A) to noncitizens already in the country would render superfluous a recent amendment to section 1226(c). See Gomes, 2025 WL 1869299, at *5. Although section 1226(a) sets out a discretionary detention scheme, section 1226(c) provides an exception which mandates detention for certain criminal noncitizens. See 8 U.S.C. § 1226(c)(1)(E). Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E) (emphasis added); see Gomes, 2025 WL 1869299, at *5 (explaining statutory section).

---

[1] There are no similar references in section 1226. See 8 U.S.C. § 1226. Section 1226 references circumstances that logically would occur inside the country, such as the detention of certain "criminal aliens" upon their release from a correctional facility and the issuance of detainers to "State [or] local officials." See 8 U.S.C. § 1226(c)(1), (3).

If every "applicant for admission"—which is defined as an "alien present in the United States who has not been admitted," see 8 U.S.C. § 1226(a)(1)—is already subject to mandatory detention under section 1225(b)(2)(A), as the government contends, there would have been no need for the new section 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" and who has been "charged with, arrested for, or admits to" committing certain crimes, see 8 U.S.C. § 1226(c)(1)(E). Reading § 1225 as the government proposes would thus render § 1226(c)(1)(E) superfluous. See Gomes, 2025 WL 1869299, at *5; Lopez Benitez, 2025 WL 2371588, at *7; Romero v. Hyde, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025). The passage of the Laken Riley Act provision shows that Congress understood that not all noncitizens present in the United States who entered without lawful admission were subject to mandatory detention under section 1225(b)(2)(A), and Congress wanted to ensure that those who had certain criminal histories would be detained. Maldonado v. Olson, No. 25-cv-3142, 2025 WL 2374411, *12 (D. Minn. Aug. 15, 2025) ("[C]ourts 'do not lightly' find that Congress adopted 'two separate clauses in the same law to perform the same work.' The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." (quoting United States v. Taylor, 596 U.S. 845, 857 (2022)).

"When Congress acts to amend a statute, [the Court] presume[s] it intends its amendment to have real and substantial effect." See Stone v. I.N.S., 514 U.S. 386, 397 (1995); Marx v. Gen. Revenue Corp., 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Section 1226(c)(1)(E) is a detention provision; it has no other purpose. See 8 U.S.C. § 1226(c)(1)(E). If all noncitizens present in the United States without lawful admission were subject to mandatory detention under section 1225(b)(2)(A) already—as the government argues—section 1226(c)(1)(E) would be superfluous. Maldonado, 2025 WL 237441, at *12 ("If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless.").

Respondents also cite § 1225(c)(3) in support of its argument that all applicants for admission are "seeking admission" under § 1225(b)(2)(A). (Doc. 20 at 20-22.) Section § 1225(c)(3) provides:

> All aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers.

8 U.S.C. § 1225(a)(3) (emphasis added). Respondent contends that the use of "or otherwise" operates as a catch-all to indicate that all applicants for admission are "seeking admission." But the phrase "seeking admission" in § 1225(a)(1) implies affirmative action toward admission, such as presenting at a port of entry, not passive presence after unlawful entry. See Thuraissigiam, 591 U.S. at 138 (distinguishing "applicants" as those inspected or paroled). The term "or otherwise" does not expand this definition to all unadmitted noncitizens; it addresses those evading inspection. In addition, Congress used the term "arriving alien" narrowly elsewhere in § 1225, suggesting § 1225(b)(2)(A) does not apply broadly to inland apprehendees. See 8 C.F.R. § 1001.1(q) (defining "arriving alien" as one at a port or recently entered).

In addition, the order releasing Petitioner from detention in 2005 indicates she was placed in removal proceedings and released on her own recognizance pursuant to Section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). (Doc. 20-1 at 9.) This further undermines the government's argument that she is subject to mandatory detention under section 1225(b). Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," Jennings, 583 U.S. at 289, "and it applies when a noncitizen is 'arrested and detained' '[o]n a warrant issued by the Attorney General.'" Gomes, 2025 WL 1869299, at *5 (quoting 8 U.S.C. § 1226(a)). There is nothing in the record to indicate Petitioner has ever been detained, either in 2005 or 2025, pursuant to § 1225(b). That is the only provision that could have applied under the plain terms of the statute. See also Jennings, 583 U.S. at 281 (explaining that section 1226(a) applies to those "already in the country"); Gomes, 2025 WL 1869299, at *5 (reaching the same conclusion); Lopez Benitez, 2025 WL 2371588, at *10 (holding that the government's initial release of a noncitizen pursuant to section 1226 indicated he was not subject to mandatory detention under section 1225).

The government previously applied section 1226(a) to noncitizens, such as Petitioner, who entered the country without admission. See Matter of Yajure Hurtado, 29 I&N Dec. 216 n.6 (B.I.A. 2025) ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond

hearings for aliens who entered the United States without inspection."); Martinez, 2025 WL 2084238, at *6. While divining the meaning of a statute belongs to the "independent judgment" of the courts, "'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'" Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385–86, 412 (2024) (quoting NLRB v. Noel Canning, 573 U.S. 513, 525 (2014)). For decades, DHS has applied § 1226(a) to noncitizens who entered without inspection but were apprehended inland, acknowledging they are not "arriving aliens" at a port of entry. Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1116 (9th Cir. 2007). This is "powerful evidence" of a "natural and reasonable" reading of the statute. Abramski v. United States, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting). The Court finds that the government's longstanding practice, under which section 1225(b)(2)(A) would not have applied to Petitioner's circumstances, is consistent with the text and statutory scheme. See, e.g., Lopez Benitez, 2025 WL 2371588, at *8 (reaching same conclusion).[2]

The government also makes the policy argument that subjecting those who are detained at the border to mandatory detention, while allowing those who entered the United States without permission to be released on bond, "would create the perverse incentive for aliens to enter the country unlawfully – or surreptitiously get access to the country's interior – rather than enter at a lawful location." (Doc. 20 at 26.) This argument disregards the different due process considerations at issue for noncitizens encountered at the border or ports of entry, versus for noncitizens who have established residence in this country. As the court in Romero noted:

> The relevant distinction . . . is between persons inside the United States and persons outside the United States. That distinction is consistent with the long history of our immigration laws and with the Constitution. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed.2d 653 (2001).

---

[2] The fact that the government's new interpretation of statute conflicts with years of prior interpretation also supports that Petitioner, at a minimum, has shown that there are serious questions concerning the merits of its claims regarding the statute's interpretation.

12

Romero, 2025 WL 2403827, at *12–13; cf. Lopez-Campos, 2025 WL 2496379, at *9–10 (finding that the government's application of section 1225(b)(2)(A) in similar circumstances violated detainee's due process rights).

Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). "It is therefore reasonable to read these statutes 'against [that] backdrop.'" Romero, 2025 WL 2403827, at *13 (quoting Hewitt v. United States, 145 S. Ct. 2165, 2173 (2025)). Moreover, policy arguments cannot override the plain meaning of the text. See also Romero, 2025 WL 2403827, at *12.

In sum, the Court concludes that Petitioner is likely to succeed on the merits of her claim that she is not subject to mandatory detention under section 1225(b)(2)(A) and that she was wrongfully denied release on bond under section 1226(a), as initially determined by the IJ.

### III.   Irreparable Harm

Turning to the second Winter factor, the Ninth Circuit has recognized that there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." Hernandez, 872 F.3d at 995.

Petitioner has established that she has been suffering and will continue to suffer irreparable harm in the absence of injunctive relief. Petitioner remains in need of treatment and medication for her diabetic condition. Petitioner states she has already been rushed to the hospital on three occasions due to inadequate care (only one injection per day vs. her normal two-a-day injections). According to Petitioner's doctor, Petitioner is insulin dependent, and "[w]ithout significant attention to her diabetes she will certainly wind up in DKA and likely hospitalization or death." (Doc. 1-6 at 1.)

The government does not dispute Petitioner's evidence that her medical needs are substantial or that her detention increases her risk of further medical complications. However, Respondents contend that her claim of inadequate health care is unsupported. Respondents claim Petitioner is being provided proper care under the circumstances, and that when she was taken into custody, she advised officers she was in good health. (Doc. 20 at 28.) Respondents ignore the fact that Petitioner has

already been transported to the hospital for hyperglycemia on three occasions while in detention, which supports her claim that her diabetic condition is not being treated adequately.

Respondent also contends that Petitioner's "unlawful deprivation of physical liberty" is a harm that "is essentially inherent in detention," and thus "the Court cannot weigh this strongly in favor of" Petitioner. (Doc. 20 at 28.) This argument is flawed because the government is attempting to enforce the immigration laws based on a misreading of the statutes, as noted above. As other courts that have faced this issue have explained, the violation of Petitioner's statutory rights causes "immediate and irreparable injury." Maldonado Bautista v. Santacruz, No. 5:25-cv-01874-SSS-BFM (C.D. Cal. July 28, 2025).

## IV.     Balance of Hardships and Public Interest

When the government is the nonmoving party, "the last two Winter factors merge." Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Here, the balance of equities tips in Petitioner's favor. As the IJ determined in the initial custody hearing, she poses no risk, and her release would allow family support. The public interest favors family unity over unchecked detention. See Singh v. Lewis, 2025 WL 2699219, at *4 (W.D. Ky. Sept. 22, 2025). The government has a minimal burden in releasing one person, and the costs to the public for immigration detention are high. Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). Furthermore, the government's interests are not undermined because Petitioner remains in removal proceedings. These factors support relief.

## V.     Remedy

The purpose of a preliminary injunction is to return the parties to the status quo *ante*, which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last uncontested status which preceded the pending controversy.'" GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000). Petitioner seeks immediate release on a $3,000 bond as initially ordered by the IJ. The government does not argue that Petitioner presents a flight risk or danger to the community. As section 1225(b)(2)(A) does not apply to her, Petitioner has shown a likelihood of success on her claim that the government may not detain her under section 1225(b)(2)(A). The appropriate remedy is Petitioner's immediate release on a $3,000 bond.

**ORDER**

Based on the foregoing, Petitioner's motion for temporary restraining order, (Doc. 12), is GRANTED. The Court ORDERS that Respondents release Petitioner on the $3,000 bond issued by the IJ at the initial custody hearing.

In addition, within ten (10) days, the parties are DIRECTED to file a stipulation to conversion of the temporary restraining order into a preliminary injunction based on the prior submissions of the parties, or advise the Court that the parties wish to submit additional briefing.

IT IS SO ORDERED.

Dated:  **October 17, 2025**                    /s/ *Sheila K. Oberto*
                                                                UNITED STATES MAGISTRATE JUDGE